IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

DEBORAH JEAN MADDEN,

    Defendant.
                           /

No. CR 11-0879 SI

**ORDER DENYING DEFENDANT'S RENEWED RULE 29 MOTION**

On October 17, 2012, defendant Deborah Madden timely renewed her motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Argument on the matter was heard on November 30, 2012. Having considered the arguments of the parties and the papers submitted, the Court hereby DENIES defendant's motion.

**BACKGROUND**

Defendant was charged with knowingly or intentionally acquiring or obtaining possession of the controlled substance cocaine by misrepresentation, fraud, forgery, deception, or subterfuge in violation of 21 U.S.C § 843(a)(3). This charge was based on actions that defendant took during her time as a criminologist in the San Francisco Police Department Crime Laboratory. The jury verdict form also had a lesser included offense of simple possession of cocaine.

At the close of the United States's case on September 27, 2012, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court denied defendant's motion. On October 3, the Court declared a mistrial after the jury was unable to reach a unanimous verdict. Defendant timely renewed her motion for a judgment of acquittal.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c) permits a court to "set aside the verdict and enter an acquittal" if the jury has returned a guilty verdict or "[i]f the jury has failed to return a verdict." Fed. R. Crim. P. 29(c)(2). "In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (internal quotation marks omitted). The court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (internal quotation marks omitted); *see also Alarcon-Simi*, 300 F.3d at 1176.

## DISCUSSION

In support of her motion, defendant relies on *United States v. Wilbur*, 58 F.3d 1291 (8th Cir. 1995). In *Wilbur*, the defendant was a physician who was convicted of acquiring morphine through misrepresentation, fraud, forgery, deception, or subterfuge by taking it from his patient's IV bag on multiple occasions. *Wilbur*, 58 F.3d at 1292. The Eighth Circuit found that the evidence was insufficient to sustain the conviction because the government had failed to prove that the material misrepresentation, fraud, deception, or subterfuge was "'a cause in fact of the acquisition' of morphine." *Id.* (quoting *United States v. Bass*, 490 F.2d 846, 857 (5th Cir. 1974) (finding insufficient evidence of deception causing the acquisition because the doctor testified that, even if he had been told that the defendant had already received another prescription from another doctor for the same narcotic substance, he might still have given him the same prescription)). In *Wilbur*, the government attempted to show misrepresentation or deception based on an incident where Dr. Wilbur was alone with the patient and a nurse knocked on the door and asked if he needed any help. *Id.* Dr. Wilbur replied that he did not need any help because he "was just going to visit with [the patient] for a while." *Id.* The court stressed that the testimony at trial never established whether the defendant took the morphine before or after the conversation with the nurse, and that he spoke neither to the nurse nor the family before he went into the patient's room. *Id.* at 1293. In a separate incident, the patient's wife testified

that Dr. Wilbur told her to "go have coffee" while he "checked over" the patient, but there was no testimony that Dr. Wilbur took morphine from the patient on that day. *Id.* The Eighth Circuit found that because there was no evidence that Dr. Wilbur took the morphine from the patient after he told the nurse he was just visiting with the patient or after he told the wife to go have coffee, there was "no evidence of trickery that *allowed* his acquisition of morphine." *Id.* (emphasis added). Defendant argues that, like in *Wilbur*, the government cannot show that the acquisition of the drugs was directly caused by any alleged acts of misrepresentation or deception.

The United States has argued that *Wilbur* is an "outlier." In the seventeen years since it was decided, only two cases cite the opinion. Both of these cases are "unpublished," and both affirm the conviction of the defendant. *United States v. Duffy*, 23 F. App'x 617 (8th Cir. 2001); *United States v. Tomblin*, 2:10-CR-00130, 2011 WL 829268 (S.D.W.Va. Mar. 7, 2011). A majority of courts have affirmed § 843(a)(3) convictions for a sufficiency of evidence, and several are similar to the instant case. In *United States v. Neighbors*, 23 F.3d 306 (10th Cir. 1994), the government presented evidence that showed that the defendant pharmacist ordered Dilaudid and Valium drugs and then diverted them for his own use. The Tenth Circuit found that, even though the evidence was "circumstantial in nature," it was sufficient for a conviction. *Id.* at 310. In *United States v. Galyen*, 798 F.2d 331 (8th Cir. 1986), the defendant, an amputee, obtained prescriptions for painkillers from multiple doctors, in a manner similar to the defendant in *Bass*. However, unlike in *Bass*, the doctor testified that he would not have prescribed the drugs if he had known of the other prescriptions. *Id.* at 332. The Eighth Circuit found that the defendant's acts of driving extra miles to get prescriptions filled at in different towns was adequate to support an inference that he was engaged in subterfuge, even if he did nothing more than fail to inform his doctor of his other prescriptions. *Id.* at 333.

The United States also argues that it has presented sufficient evidence for a reasonable jury to find that Madden used deception or subterfuge to obtain cocaine. First, she shifted her work hours so that she was working late nights in the lab alone. The jury could have found that her failure to report her overtime was deceptive and enabled her to work late nights undetected and have unsupervised access to the cocaine. Second, the evidence showed that defendant entered her co-worker Tasha Smith's evidence locker without permission after hours, and then lied about entering the locker. The jury could

3

have found that the unauthorized and surreptitious entry into the evidence locker, and the later attempt to lie about the incident, was deceptive, and it allowed her to obtain cocaine. Third, the government showed the jury how an evidence envelope with missing cocaine had been restapled, and the jury could have inferred that the defendant deceptively restapled the envelope to deceive others that she had not opened it without authorization and taken cocaine, thus enabling her to continue to take cocaine without being caught. Fourth, the United States presented evidence that defendant kept her envelopes in the lab long after she had completed testing them, and the jury could have found that this subterfuge enabled her to have a constant access to cocaine.

Defendant argues that each of these does not directly cause the acquisition of cocaine. She argues that working late or keeping the packages late is not a direct cause of acquisition. However, there was enough evidence presented that a reasonable jury might infer that these deceptions did indeed cause her to have unrestricted access to the cocaine. She also asserts that the government could not prove beyond a reasonable doubt that she entered the locker after-hours, or that there was even a theft of cocaine from those envelopes because the weight discrepancy is only .31 grams. She also argues that the government cannot prove that there was cocaine taken after she lied about entering the locker, and therefore it cannot prove that the lie enabled her to take cocaine in the future. However, it is the exclusive function of the jury to draw reasonable inferences from the facts, and a reasonable jury could conclude that there was a theft of .31 grams of cocaine from the evidence locker, that Madden went into the locker in a deceptive manner or after-hours, and that her lie enabled her to continue to steal cocaine. Finally, defendant argues that restapling the envelope is a deception that only covers up the completed theft, and does not cause the acquisition of cocaine from that envelope. She cites *People v. Tatum*, 209 Cal. App. 2d 179 (1962) (holding that a defendant could not be convicted of both theft and concealing that property that he stole), for the proposition that concealment is part of the act of the theft. However, *Tatum* was faced with a different double jeopardy issue, and its holding relied on its interpretation of intent of the legislature when it wrote the concealment statute. A jury could still conclude that the deceptive concealment caused the future acquisition of more cocaine. This case is more like *Galyen*, where the court found that there was sufficient evidence that the deception caused the acquisition when the defendant merely drove extra miles and omitted that he had multiple prescriptions. Unlike in

4

*Wilbur*, here there is evidence that could allow a reasonable jury to conclude that the deceptions occurred during or before the acquisitions.

## CONCLUSION

Having considered the arguments of the parties, the Court finds that there was sufficient evidence presented to the jury from which a rational fact-finder could have found that defendant obtained possession of cocaine by misrepresentation, fraud, forgery, deception, or subterfuge. The motion for judgment of acquittal is DENIED.

**IT IS SO ORDERED.**

Dated: November 30, 2012

SUSAN ILLSTON
United States District Judge